## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GARY PISNER,

    Plaintiff,

    v.

MARLA RUBINSTEIN and
MARLA PISNER 2011 TRUST,

    Defendants.

Civil Action No.:  TDC-21-0020

## MEMORANDUM OPINION

Plaintiff Gary Pisner has filed this civil action against Defendants Marla Rubinstein and Marla Pisner 2011 Trust (collectively, "the Rubinstein Defendants") in which he asserts state law claims of breach of contract, abuse of process, fraud or misrepresentation, defamation, and breach of fiduciary duty relating to a trust created by the parties' mother in 2008 and prior litigation in Maryland state court over the administration of the trust.  Pending before the Court are the Rubinstein Defendants' Motion to Dismiss and Pisner's Motion to Strike the Motion to Dismiss, which are fully briefed.  Upon review of the submitted materials, the Court finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Rubinstein Defendants' Motion to Dismiss will be GRANTED, Pisner's Motion to Strike will be DENIED, and this case will be DISMISSED.

## BACKGROUND

On December 12, 2008, Marion Pisner created the Marion E. Pisner Revocable Trust ("the Trust"), under which her children, Gary Pisner and Marla Rubinstein, succeeded her as the beneficiaries and co-trustees upon her death in 2009.  In 2016, the parties began a course of

litigation in Maryland and District of Columbia courts, extending until February 2021, relating to disagreements about the management of the Trust and its assets.

On December 13, 2016, Pisner initiated a civil action ("the Maryland Action") in the Circuit Court for Montgomery County, Maryland (the "Circuit Court"), and filed a Petition for a Declaration of Rights seeking "binding guidance" in the form of a declaratory judgment from the court relating to the administration of the Trust. Defs.' Record ("R.") 20, Mot. Dismiss Exs. 1-15, ECF Nos. 15-1 to 15-16. In particular, Pisner alleged that Rubinstein had obstructed the sale of a Trust-owned residential property on Gorman Street in Washington, D.C. ("the Gorman Street Property") on the basis of "self-dealing and improper purposes." R. 32. In his Petition, Pisner sought rulings on numerous issues, including whether he could proceed with the sale of the Gorman Street Property without Rubinstein's involvement, whether Rubinstein's alleged obstruction constituted self-dealing, whether Rubinstein could properly demand an updated audit of the Trust's assets, which would require a review of his financial records, and whether Rubinstein was improperly demanding deductions of Trust assets to be distributed to her.

Following a hearing on the Petition on August 24, 2017, the Circuit Court ordered Pisner and Rubinstein to show cause as to why the court should not assume jurisdiction over the Trust, appoint an independent trustee, and order an accounting of Trust assets in response to competing allegations of improper administration of the Trust and self-dealing. On September 28, 2017, the court held a hearing on the Order to Show Cause and issued an order on October 11, 2017 removing both Pisner and Rubinstein as trustees, appointing an independent third-party attorney, Robert McCarthy, to administer the Trust and complete an accounting of Trust assets, and directing Pisner and Rubinstein to assist McCarthy by providing all documents and information necessary for the accounting and administration of the Trust.

On November 13, 2017, Pisner filed a Request for Reconsideration and Notice of Objections for Appeal, which was denied on January 18, 2018. On June 13, 2018, after McCarthy had filed a Petition for a Finding of Contempt and Request for Incarceration against Pisner, the Circuit Court held Pisner in contempt for willfully failing to provide documents, including tax returns, to McCarthy as part of the accounting of Trust assets and for improperly managing Trust bank accounts after he had been removed as co-trustee. On February 14, 2019, McCarthy, having completed an accounting of the Trust, filed a Motion for Approval of Trust Distribution in which he proposed a final distribution of the Trust's assets. The Circuit Court issued an order approving the final distribution on April 12, 2019. On April 29, 2019, Pisner filed a Request for Reconsideration of the Circuit Court's distribution order, which was denied on May 28, 2019.

Pisner appealed both the Circuit Court's rulings on the Petition and the contempt order to the Maryland Court of Special Appeals in a series of consolidated filings. The Court of Special Appeals construed Pisner's 15 questions presented as addressing (1) whether the Circuit Court erred in assuming jurisdiction over the Trust, appointing and declining to remove a substitute trustee, ordering an accounting, and approving the distribution of the remaining Trust assets; and (2) whether the Circuit Court erred in holding Pisner in contempt. In an unreported opinion filed March 18, 2020, the Court of Special Appeals affirmed the judgment of the Circuit Court on both grounds. Pisner then filed a petition for a writ of certiorari to the Court of Appeals of Maryland, which was denied on July 24, 2020. *See Pisner v. McCarthy*, 232 A.3d 264 (Md. 2020).

On January 14, 2019, while his appeal to the Maryland Court of Special Appeals was pending, Pisner filed a complaint against Rubinstein in the Superior Court of the District of Columbia (the "Superior Court") in which he alleged the same five causes of action advanced in his Complaint in this matter, specifically breach of contract, abuse of process, fraud or

3

misrepresentation, defamation, and breach of fiduciary duty. At a hearing on June 14, 2019, the Superior Court granted Rubinstein's motion to dismiss for *forum non conveniens* and denied Pisner's motion for reconsideration on August 7, 2019. On February 25, 2021, the District of Columbia Court of Appeals affirmed the Superior Court's dismissal on the grounds of *forum non conveniens*.

While his appeal of the Superior Court's dismissal was pending, Pisner filed the present civil action in this Court on January 4, 2021. In the Complaint, he asserts five state law causes of action in separate counts numbered as follows: (1) breach of contract, arising from Rubinstein's alleged failure to comply with an agreement between the parties relating to the sale of the Gorman Street Property; (2) abuse of process, arising from Rubinstein's alleged use of court filings to cause Pisner's removal as trustee and the order of contempt against him in the Maryland Action; (3) fraud or misrepresentation, based on unspecified false statements made by Rubinstein to the Circuit Court, McCarthy, and "various parties" in the Maryland Action; (4) defamation, arising from Rubinstein's allegation, during the course of the litigation, that Pisner had embezzled money from the Trust; and (5) breach of fiduciary duty, arising from Rubinstein's alleged mismanagement of, and self-dealing relating to, the Trust. Compl. at 4-11, ECF No. 1.

## DISCUSSION

In their Motion to Dismiss, the Rubinstein Defendants argue that Pisner's claims are barred by the *Rooker-Feldman* doctrine and the preclusion doctrines of *res judicata* and collateral estoppel. The Rubinstein Defendants also assert various arguments on why all of Pisner's counts fail to state a claim on the merits, and they seek dismissal of Defendant Marla Pisner 2011 Trust as an improper party to this action. In opposing the Motion, Pisner has filed a Motion to Strike

4

the Motion to Dismiss, but he has not responded to the Rubinstein Defendants' Motion on the merits.

## I.      Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.     Motion to Strike

In response to the Rubinstein Defendants' Motion to Dismiss, Pisner has filed a Motion to Strike Defendants' Motion to Dismiss in which he argues that the Motion to Dismiss is improper because its arguments and citations violate certain limitations imposed by the Court at a May 14, 2021 Case Management Conference, and it improperly relies upon numerous submitted exhibits. As an initial matter, the Rubinstein Defendants' Notice of Intent to File a Motion to Dismiss provided explicit notice to Pisner and the Court that Defendants would be advancing the arguments asserted in the Motion: the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. *See* ECF No. 8. At the Case Management Conference, while the Court encouraged the parties to focus

any arguments pertaining to the *Rooker-Feldman* doctrine on current law, it did not impose any strict limitation on the specific arguments that the Rubinstein Defendants could assert, or the case law they could cite, in the Motion to Dismiss. *See* ECF No. 12. The Court therefore finds no violation of Court limitations on the Motion to Dismiss.

As for the attached exhibits, generally, on a motion to dismiss pursuant to Rule 12(b)(6), courts may not consider documents beyond the pleadings. Fed. R. Civ. P. 12(d). However, courts may consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201)). Under this principle, courts regularly take judicial notice of court filings and orders issued in court proceedings, including in considering a motion to dismiss based on *res judicata* or collateral estoppel. *See, e.g., Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (stating that a "court may take judicial notice of facts from a prior judicial proceeding" in evaluating a *res judicata* defense as long as there is no dispute as to the "factual accuracy of the record of [the] previous suit"); *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992) ("When entertaining a motion to dismiss on the ground of

*res judicata* or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding."), *aff'd*, 989 F.2d 491 (4th Cir. 1993).

Here, the exhibits attached to the Motion to Dismiss consist of court filings and orders from the Maryland Action and the D.C. Superior Court case between Pisner and Rubinstein relating the administration of the Trust, specifically *Marion E. Pisner Trust v. Rubinstein*, No. 427983-V (Cir. Ct. Montgomery Cnty., Md.) and *Pisner v. Rubinstein*, No. 2019 CA 000229 B (D.C. Super. Ct.). The Rubinstein Defendants ask the Court to take judicial notice of these documents. Pisner does not dispute the authenticity of any of the attached documents but instead argues that the materials are irrelevant and that the factual conclusions underlying the decisions in those cases may not be considered for their truth in this matter. The Court need not consider the accuracy of the facts and factual findings asserted in the attached materials from the other court proceedings in evaluating the Rubinstein Defendants' arguments. Rather, the Court will consider the content of the exhibits only to the extent necessary to determine whether certain claims or issues were previously asserted, litigated, and decided in the prior cases, regardless of whether the facts stated were accurate or whether the claims were rightly decided. Because the attached exhibits are filings and orders from court proceedings relevant to the Rubinstein Defendants' arguments and are of undisputed authenticity, the Court may take judicial notice of them and consider them in resolving the Motion to Dismiss. *See Andrews*, 201 F.3d at 524 n.1. Accordingly, Pisner's Motion to Strike will be denied.

## III. *Rooker-Feldman* Doctrine

The Rubinstein Defendants argue that Pisner's claims are barred by the *Rooker-Feldman* doctrine, a jurisdictional doctrine that draws its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v.*

7

*Feldman*, 460 U.S. 462 (1983). This doctrine bars federal jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 320 (4th Cir. 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis removed). In *Thana*, the United States Court of Appeals for the Fourth Circuit cautioned that this doctrine has a "narrow focus." *Id.* It "assesses only whether the process for appealing a state court judgment to the Supreme Court . . . has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.* However, "if a plaintiff in federal court does not seek review of the state court judgment itself but instead '*presents an independent claim*, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.'" *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).

Although Pisner was the state court loser, and final judgment has been entered in the Maryland Action, it is not clear that his claims in the Complaint allege an injury caused by the Circuit Court's judgment itself, as is required by the *Rooker-Feldman* doctrine. *See Thana*, 827 F.3d at 319. Although not a model of clarity, Counts 2-4 of Pisner's Complaint assert that Rubinstein made multiple misrepresentations and engaged in improper tactics during the course of the Maryland Action, which he claims amounted to abuse of process, fraud, and defamation. Any such alleged misrepresentations or actions, however, were not "produced by" the state court judgment itself; at best they were "ratified, acquiesced in, or left unpunished by" that judgment. *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (stating that "[a] plaintiff's injury at the hands of a third party may be ratified, acquiesced in, or left unpunished by a state-court decision without

8

being produced by the state-court judgment"). Likewise, although the Rubinstein Defendants argue that the claims in Count 1 (breach of contract) and Count 5 (breach of fiduciary duty) were effectively asserted and rejected by the Circuit Court in the Maryland Action, those specific causes of action were not included in the Petition in the same form as presented here, so it would not be accurate to deem the present case to be an effort to pursue a direct appeal of the Circuit Court's judgment to federal court. *See Thana*, 827 F.3d at 321 (finding that "the differences between the two proceedings demonstrate that [the] federal action must be seen as an independent, concurrent action that does not undermine the Supreme Court's jurisdiction over any state court judgment"). Accordingly, although the claims in the Complaint may be sufficiently intertwined with the rulings in the Maryland Action that it may well be impossible to rule in favor of Pisner without effectively finding that the Circuit Court and the Court of Special Appeals erred, such a conflict must be addressed by "the application of traditional preclusion principles," not within the narrow limits of the *Rooker-Feldman* doctrine. *Id.* at 322. The Rubinstein Defendants' Motion will be denied as to the *Rooker-Feldman* argument.

## IV.   Preclusion

The Rubinstein Defendants also argue that all of Pisner's claims are barred by the doctrines of *res judicata* and collateral estoppel· because the claims and issues advanced in the Complaint were litigated or could have been litigated in the Maryland Action. Because the judgment alleged to be preclusive is a Maryland state court judgment, the Court will apply Maryland law relating to the application of these doctrines. *See Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 525 (1986) (holding that it was error to fail to consider the preclusive effect of a state court judgment and to do so applying state law); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (holding that the "preclusive effect of a judgment rendered in state court is

determined by the law of the state in which the judgment was rendered"). *Cf. Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").

The doctrine of *res judicata*, sometimes referred to as claim preclusion, provides that "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." *Prince George's Cnty. v. Brent*, 995 A.2d 672, 677 (Md. 2010) (quoting *MPC, Inc. v. Kenny*, 367 A.2d 486, 488-89 (Md. 1977)). *Res judicata* thus comprises three elements: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Spangler v. McQuitty*, 141 A.3d 156, 175 (Md. 2016) (quoting *Cochran v. Griffith Energy Servs., Inc.*, 43 A.3d 999, 1002 (Md. 2012)).

Collateral estoppel, also known as issue preclusion, is a subset of *res judicata*. *In Re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Under Maryland law, collateral estoppel applies where (1) the issue to be precluded is identical to one previously decided; (2) there was a final judgment on the merits; (3) the party against whom estoppel is to be applied was a party or in privity with a party in the prior adjudication; and (4) the party against whom estoppel is to be applied was given a fair opportunity to be heard on the issue. *Leeds Fed. Sav. & Loan Ass'n v. Metcalf*, 630 A.2d 245, 250 (Md. 1993).

A.    **Counts 1 and 5**

Counts 1 and 5, the claims for breach of contract and breach of fiduciary duty, respectively, are barred by *res judicata* because they were or could have been litigated in the Maryland Action. First, the parties in the present case were the same or in privity with the parties in the Maryland Action.  Under Maryland law, for purposes of *res judicata*, a party is "in privity" with another when the party is "so identified in interest with" the other that it "represents the same legal right." *Bank of New York Mellon v. Georg*, 175 A.3d 720, 744 (Md. 2017).  A non-party is in privity with a party to a lawsuit if it has "a direct interest in the suit, and in the advancement of their interest," such that it "take[s] open and substantial control of its prosecution" or is "so far represented by another that [its] interests receive actual and efficient protection."  *Id.* at 745 (quoting *Ugast v. La Fontaine*, 55 A.2d 705, 708 (Md. 1947)).  Although Pisner filed the Maryland Action as "In re Marion E. Pisner Trust," he identified the Marion E. Pisner Trust as "in care of Gary Pisner, Attorney for & Co-Trustee," and he identified Marla Rubinstein as a "Co-Trustee" and an "Interested Party." R. 1, 20.  In the Maryland Action, the Circuit Court listed the Marion E. Pisner Trust as the plaintiff, represented by Pisner, who is an attorney, and Marla Rubinstein as both the defendant and an "Interested Party."  R. 58-59.  Pisner and Rubinstein, in fact, both appeared in court throughout that case.  Under these circumstances, the Court finds that Pisner had "a direct interest in the suit" and took "substantial control of its prosecution" such that he was in privity with the Trust for purposes of the Maryland Action, *see Georg*, 175 A.3d at 745, and that Rubinstein was a party.  In turn, where Pisner has alleged that  Defendant Marla Pisner 2011 Trust is "essentially a pseudonym for Marla Rubinstein," Compl. at 3, that defendant is in privity with Marla Rubinstein because they are "so identified in interest with" each other that they represent the "same legal right." *See Georg*, 175 A.3d at 744.

11

Second, these claims could have been raised in the prior litigation.  For this element, a claim meets this requirement if it "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *See Laurel Sand & Gravel, Inc.*, 519 F.3d at 162 (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir.1999)) (comparing the allegations set forth in a plaintiff's complaint to those set forth in the prior litigation for purposes of determining whether *res judicata* applies).  Here, the breach of contract and breach of fiduciary duty claims arise directly from the same events underlying the parties' disputes over the administration of the Trust that were litigated in the Maryland Action.

In the breach of contract claim in Count 1, Pisner alleges that Rubinstein had a contractual agreement relating to the sale of the Gorman Street Property, including as to the hiring of a real estate agent and the division of remaining rent and the proceeds of the sale, which Rubinstein breached when she failed to participate in the selection of a real estate agent, "refused to cooperate in the sale of the [Gorman Street] residential property," rejected a sale to a third party, and demanded that the property be transferred to her.  Compl. at 4-5.  In the Maryland Action, the entire premise of Pisner's claims on behalf of the Trust was that Rubinstein was failing and acting improperly in her role as a co-trustee of the Trust.  Among other specific grievances asserted in the Petition, Pisner focused on various disagreements between himself and Rubinstein relating to the management and proposed sale of the Gorman Street Property, including Rubinstein's refusal to agree to a proposed real estate agent and disputes over how the proceeds of a sale would be distributed.  He specifically alleged that a sale pursuant to an offer "at an excellent price" had been "obstructed by Rubinstein for self-dealing and improper purposes" and requested that the court allow him to proceed with the sale unilaterally.  R. 32-33, 36.  Where the Maryland Action included

12

multiple allegations relating to the Gorman Street Property, the breach of contract claim in Count 1 arises out of the same series of transactions and occurrences underlying that case.

In the breach of fiduciary duty claim in Count 5, Pisner alleges that Rubinstein breached her fiduciary duty as a co-trustee of the Trust and their parents' estates by acting in a "self-serving, unreasonable" manner and by "fail[ing] to manage the Trust" and the estates "during those times when she agreed to do so." Compl. at 11. In the Petition in the Maryland Action, Pisner specifically sought a declaration that Rubinstein's alleged obstruction of the sale of the Gorman Street Property constituted "self-dealing and, as such, . . . a breach of the Trustee's fiduciary duty." R. 36. More broadly, Pisner included in the Petition a specific request for a ruling on "self-dealing by a Trustee" in which he alleged self-dealing by Rubinstein on additional matters. *Id.* Thus, Pisner effectively alleged the present breach of fiduciary claim in the Maryland Action, and to the extent it differs in any way, it plainly arises from the same series of transactions at issue in the Maryland Action and thus could have been litigated in that proceeding.

Finally, *res judicata* requires a "final judgment on the merits in the previous action." *Georg*, 175 A.3d at 750. A trial court's ruling constitutes a final judgment when it is "an unqualified, final disposition of the matter in controversy." *Id.* (quoting *Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138, 145 (Md. 2009)). Where the Maryland Action resulted in a final judgment by the Circuit Court that was appealed by Pisner and then affirmed by the Court of Special Appeals, there is no question that there was a final judgment on the merits in that case. Because Pisner's breach of contract and breach of fiduciary duty claims either were or could have been litigated in the Maryland Action, the Court will dismiss them pursuant to *res judicata*.

13

**B.      Counts 2-4**

Pisner's claims for abuse of process, fraud or misrepresentation, and defamation are based on Rubinstein's actions taken during the course of the Maryland Action.  Fairly construed, these counts primarily focus on Pisner's claim that Rubinstein falsely and improperly accused him of taking Trust funds to pay for his own personal expenses.  In Count 2, Pisner alleges abuse of process based on the claim that "Rubinstein asserted a claim of conversion that was . . . false"; in Count 3, he alleges fraud based on the claim that Rubinstein used unspecified false statements to "deceive[] the court appointed trustee and his accountant" and to "enrich her"; and in Count 4, he alleges defamation based on the claim that Rubinstein "falsely alleged that Pisner had embezzled money from the Trust."  Compl. at 8-10.  To the extent that Counts 2-4 are based on the issue of whether Pisner improperly took funds from the Trust for his own personal use, they fail based on collateral estoppel because that issue was actually litigated and decided in the Maryland Action.

In the Maryland Action, in her response to the Order to Show Cause of August 24, 2017, Rubinstein requested an accounting of the Trust's assets based on the concern that Pisner had engaged in self-dealing during his time as trustee, such as by using Trust funds to pay his personal credit card bills and the legal fees for his divorce.  On September 18, 2017, in a Motion to Strike Rubinstein's Response to the Petition, Pisner alleged that Rubinstein had made "a plethora of false statements" regarding his management of the Trust in filings to the Circuit Court, including allegations by Rubinstein that "the Trust had paid Pisner's credit cards, every month."  R. 214-15.  The Circuit Court then appointed McCarthy as an independent trustee and ordered him to conduct an accounting and proposed distribution of the Trust assets.  After conducting the accounting, McCarthy proposed a distribution of assets, which the Circuit Court approved on April 12, 2019.  The approved distribution awarded Rubinstein a greater share of the remaining cash available in

14

the Trust as compensation for the fact that "Pisner had previously received distributions from the trust that totaled approximately $594,000 more than distributions received by Rubinstein." R. 180. Where the Trust provided that Pisner and Rubinstein were to receive equal shares of the Trust distributions, the Circuit Court's order approving McCarthy's proposed distribution necessarily decided the question of whether Pisner had taken more than his fair share of the Trust funds and constituted a final judgment on that issue. Accordingly, the first element of collateral estoppel, that the issue to be precluded is identical to one previously decided, is satisfied. *See Leeds Fed. Sav. & Loan Ass'n*, 630 A.2d at 250.

The remaining elements have also been established. As discussed above, Pisner and Rubinstein were either parties to, or in privity with, the parties in the Maryland Action. *See supra* part IV.A. The Circuit Court's order approving the distribution of assets, which was affirmed by the Court of Special Appeals, constituted a final judgment on the merits, and the determination that Pisner had taken additional distributions from the Trust during his time as trustee was essential to the court's decision to award Rubinstein a greater share of the remaining Trust assets in the final distribution. Finally, where Pisner filed multiple motions during the Maryland Action, including his Motion to Strike Rubinstein's Response to the Petition, his Motion to Strike the Proposed Distribution, and his Motion for Reconsideration of the Circuit Court's distribution order, he had a full and fair opportunity to litigate this issue. Accordingly, to the extent that Pisner's claims in Counts 2-4 for abuse of process, fraud or misrepresentation, and defamation are based on the allegation that Rubinstein falsely accused Pisner of improperly enriching himself by taking Trust funds for personal use, those claims are precluded by collateral estoppel. *See Leeds Fed. Sav. & Loan Ass'n*, 630 A.2d at 250-51. Because some aspects of Counts 2-4 may not be based on this issue, the Court will consider the remaining arguments for dismissal of those counts.

## V.    Failure to State a Claim

To the extent that there are parts of Pisner's claims in Counts 2-4 stem that are not barred by collateral estoppel, the Rubinstein Defendants argue that Pisner has failed to state plausible claims for relief on each of Counts 2-4.   The Court agrees.

### A.    Abuse of Process

In Count 2, alleging abuse of process, Pisner asserts that in the Maryland Action, Rubinstein submitted filings containing "a claim of conversion" and other unspecified "false allegations" constituting a "fraud on the court" for the purposes of "gain[ing] control of the Trust assets through a legal process with the intention to obtain results for which the process was not designed" and "hav[ing] Pisner incarcerated for contempt of court for failing to supply documents which she had sole possession of." Compl. at 7-8. An abuse of process claim requires a plaintiff to show that (1) "the defendant willfully used process after it has issued in a manner not contemplated by law"; (2) "the defendant acted to satisfy an ulterior motive"; and (3) "damages resulted from the defendant's perverted use of process." *One Thousand Fleet L.P. v. Guerriero*, 694 A.2d 952, 956 (Md. 1997). "In order to establish an abuse of process, there must be a definite act or threat that is not authorized by the process or aimed at an objective not legitimate in the use of the process." *Attorney Grievance Comm'n of Md. v. Roberts*, 904 A.2d 557, 571 (Md. 2006). The archetypal abuse of process claim arises from the use of criminal process to coerce an individual to pay a debt in order to avoid arrest and prosecution. *See Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (Md. 1984) (collecting cases).

Here, the Rubinstein Defendants argue that the Complaint fails to state a plausible abuse of process claim because it has not alleged and cannot allege that Rubinstein initiated any of the proceedings resulting in Pisner's removal as trustee and the issuance of the contempt order, and

that because both Rubinstein and Pisner were removed as trustees in the Maryland Action and replaced by McCarthy, Rubinstein did not end up gaining control of the Trust through any legal process. The Rubinstein Defendants are correct that it was Pisner, not Rubinstein, who initiated the Maryland Action by filing the Petition in the Circuit Court, so the filings he references were merely Rubinstein's responses to the Petition and subsequent orders in that case. Moreover, because the court decided to remove both parties as trustees, it was McCarthy, not Rubinstein, who moved for a contempt order against Pisner for failing to provide documents integral to the accounting. Thus, Rubinstein did not actually initiate the legal processes at issue here.

Further, Rubinstein's filings in response to the Petition do not provide a basis to advance a claim of abuse of process. Contrary to Pisner's claim, even if Rubinstein asserted a claim of conversion, the claim that Rubinstein, a self-represented party, asserted legal claims in a responsive brief based on inaccurate facts or a legal theory barred by the statute of limitations, even if done with an "ulterior motive," is not sufficient to constitute a "definite act or threat that is not authorized by the process" or one that is "aimed at an objective not legitimate in the use of the process." *See Roberts*, 904 A.2d at 571; *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004). The Court will therefore grant the Rubinstein Defendants' Motion to Dismiss as to Count 2.

### B.    Fraud or Misrepresentation

In Count 3, Pisner alleges "fraud/misrepresentation" on the grounds that "Rubinstein, in order to enrich herself at the expense of Pisner, starting in 2016, not only made false statements to the court, but made numerous false statements to numerous parties . . . under oath," including to McCarthy, "which they relied on" and which "contributed to the false testimony . . . of various

17

parties in an attempt to have Pisner incarcerated for contempt" and to "enrich [Rubinstein]." Compl. at 8-9.

As an initial matter, because the cause of action asserted in Count 3 is a fraud claim, it is subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under this heightened pleading standard, Pisner must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and "what he obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Even viewed in the light most favorable to Pisner, the Complaint fails to allege any facts relating to the time, place, or specific content of the fraudulent representations at issue. Pisner does not even describe the alleged false statements upon which this claim is based. This claim therefore must be dismissed because it violates the requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b).

Even with additional detail, Pisner's fraud claim would not state a plausible claim. To establish fraud under Maryland law, a plaintiff must show that "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013). Pisner's claim centers on his allegation that Rubinstein made fraudulent statements to third parties such as the Circuit Court and McCarthy, and that those third parties relied on her statements to his detriment, but he provides no allegation or basis to conclude that he relied upon Rubinstein's

statements himself. Maryland courts "have not permitted recovery without a demonstration that the plaintiff relied, either directly or indirectly, on the relevant misrepresentation." *Id.* at 50. Consequently, the Motion to Dismiss will be granted as to Count 3.

### C.   Defamation

In Count 4, Pisner alleges a claim of defamation asserting that "[a]s indicated in the fraud count, false statements (written and oral) were made to various third parties and to the court, but these false statements were, for the most part, defamatory statements, directed to Pisner." Compl. at 10.   To establish a claim of defamation under Maryland law, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001).   Under the first element, a defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (quoting *Rosenberg v. Helinski*, 616 A.2d 866, 871 (Md. 1992)).   Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012).   Establishing the third element, that a defendant is legally at fault, requires a showing that, at a minimum, the party making the false statement acted negligently. *Hearst Corp. v. Hughes*, 466 A.2d 486, 490–92 (Md. 1983). For the fourth element, actual harm must generally be established. *Id.* at 493; *Shapiro v. Massengill*, 661 A.2d 202, 217–18 (Md. Ct. Spec. App. 1995).   Each alleged defamatory statement constitutes a "separate instance of defamation" that must be specifically alleged. *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished decision); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015)

("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

In his Complaint, Pisner identifies only two defamatory statements: he asserts that Rubinstein "falsely alleged that Pisner had embezzled money from the Trust" and that she alleged that "Pisner was incompetent as a trustee for periods of time when Rubinstein was supposedly managing the [T]rust." Compl. at 10-11. Here, the Rubinstein Defendants correctly assert that these and any other statements underlying the defamation claim are protected by the litigation privilege. Under Maryland law, judges, attorneys, parties, and witnesses are entitled to an absolute privilege, sometimes referred to as the "litigation privilege," for statements made in judicial proceedings that "have some rational relation to the matter at bar." *O'Brien & Gere Eng'rs v. City of Salisbury*, 135 A.3d 473, 483–84 (Md. 2016). This privilege covers both statements made in a courtroom and statements made in documents filed in a judicial proceeding. *Adams v. Peck*, 415 A.2d 292, 293 (Md. 1980). "This absolute privilege protects the person publishing the defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable." *Id.*

Both of the defamatory statements identified by Pisner were made during the Maryland Action initiated by Pisner through the filing of the Petition. Therefore, Rubinstein, as a party to that case, is protected by the litigation privilege from liability for any allegedly defamatory statements made during the course of that case. *See Norman v. Borison*, 17 A.3d 697, 709 (Md. 2011) (stating that Maryland courts "give the privilege a broad and comprehensive interpretation, so as to foster the free and unfettered administration of justice"). Pisner's defamation claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the Rubinstein Defendants' Motions to Dismiss will be GRANTED, Pisner's Motion to Strike the Motion to Dismiss will be DENIED, and this case will be DISMISSED.  A separate Order shall issue.

Date:  January 31, 2022



THEODORE D. CHUANG
United States District Judge